[L. A. No. 3606. In Bank.—June 7, 1917.]

### R. W. LEONARD, Respondent, v. J. R. JAFFRAY, Appellant.

TAXATION—CITY TAXES—DEFECTIVE AUTHENTICATION OF ASSESSMENT-ROLL—AFFIDAVIT BEFORE PERSON NOT AUTHORIZED TO ADMINISTER OATH — OMISSION OF JURAT — JURISDICTION TO SELL FOR DELINQUENT TAXES.—Where a municipal ordinance required the city assessor to "take and subscribe an affidavit in the assessment-roll," in substantially a prescribed form, and further required the city clerk, after recording all changes, corrections and orders made by the board of equalization, to deliver the assessment-roll so corrected to the council, "with an affidavit thereto affixed subscribed and sworn to by him," in a prescribed form, the omission of the assessor to swear to his affidavit before any officer entitled to administer an oath, and the omission to attach any *jurat* to the form of affidavit made out and signed by the clerk, are fatal to the acquiring

of jurisdiction to sell assessed property to the city for delinquent taxes.

ID.—EFFECT OF DEED TO CITY — CURATIVE CLAUSE OF ORDINANCE.—
Neither the *prima facie* evidence of the regularity of the antecedent proceedings furnished by the deed to the city, nor the curative clause of the ordinance relating to informalities, which is essentially the same as section 3885 of the Political Code, cured such omissions.

ID.—NOTICE OF SALE BY CITY — INVALID ORDINANCE — INSUFFICIENT NOTICE OF SALE.—An ordinance of the city requiring only ten days' notice by publication and posting for the sale by the city of land sold to it for delinquent taxes contravenes a provision of its charter that the mode and manner of collecting delinquent municipal taxes and enforcing the tax lien shall "substantially be the same as the mode and manner at the time prescribed by law for the collection of state and county taxes," in view of the fact that, by section 3897 of the Political Code the analogous notice concerning state and county taxes must be published and posted for at least three successive weeks. An attempted sale after a mere ten days' notice is invalid.

ID.—INVALIDITY OF TAX PROCEEDINGS—QUIETING TITLE AGAINST PURCHASER—TENDER OF TAXES UNNECESSARY.—Where the tax proceedings leading up to the deed to the city were invalid, the property owner may have his title quieted as against a purchaser from the city, without any tender to the city of the amount of the delinquent taxes for which the property was attempted to be sold to the city.

APPEAL from a judgment of the Superior Court of Los Angeles County, and from an order refusing a new trial. J. P. Wood, Judge.

The facts are stated in the opinion of the court.

B. P. Welch, and J. R. Jaffray, for Appellant.

Crouch & Crouch, and Chas. S. Conner, for Respondent.

MELVIN, J.—Plaintiff sued to quiet title to the following described real property in the city of Los Angeles: "Lot 4, in Block 'H,' of Glassell's Subdivision of part of Lots 3, 6 and 7, in Block 39, Hancock's Survey as per map thereof on file in Book 6, page 138, of Miscellaneous Records, in the office of the County Recorder of said county." It was alleged that plaintiff was "the owner in fee and entitled to the possession of" the land. Defendant, Jaffray, answered, setting up his

own possession and title and also filed a cross-complaint to which plaintiff made answer. By his cross-complaint J. R. Jaffray asked to have his title to the property quieted as against Leonard's claims. The cause was tried partly upon stipulation and partly upon testimony and documentary proof. Judgment was in favor of plaintiff. From said judgment and from an order denying his motion for a new trial defendant and cross-complainant appeals. Some of the facts stipulated were that "R. N. Withnell was formerly the owner of said lot, and he transferred the title to his daughter, Grace E. Leonard, who died a widow, leaving no will, and leaving Richard W. Leonard her son and only heir at law, who is now the administrator of her estate''; that the city taxes upon the said lot for the year 1903 have never been paid except by way of sale of the lot; and that "certain proceedings were had in 1904 for the purpose of selling said lot to said city for nonpayment of said taxes of 1903, and in 1909 a deed was made to the city under such proceedings, there having been no redemption or repurchase of said lot from said city by anyone.'' The purported deeds to the city and from the city to James R. Jaffray were stipulated into the record by copies, plaintiff admitting their execution but reserving the right to make all legal objections to them. The final paragraph of the stipulation is as follows:

"The right, title and interest of said James R. Jaffray in and to said lot is derived and deraigned through the several proceedings above mentioned and should it be made to appear that an essential element of such proceedings is wanting, and that the defect is incurable, then and in that case his title fails and he has no other interest in the lot than the amount he paid, provided such payment is found to be a legal claim against the same, and in case there has been a compliance with law in such proceedings, then and in that case, all the right, title and interest of Richard W. Leonard or those through whom he claims, as administrator or in person, has been wholly divested and terminated, including all rights of redemption or repurchase from the city.''

The most important question to be determined, therefore, is this: Did the city ever acquire title to the property through the tax proceedings? The court found the assessment for the year 1903 deficient and defective in this, that the assessor's affidavit as required by law was not attached to the assessment-

book. It was found that the assessment-book contains what purports to be such affidavit in the form required by law and subscribed by the assessor, but it is not sworn to as in the statute required, before any officer entitled to administer an oath. The requirement of the ordinance under which the purported assessment of plaintiff's land was made is that on or before the first Monday of July in each year the assessor must "take and subscribe an affidavit in the assessment-roll" in substantially a prescribed form. The ordinance further provides that the city clerk, who is *ex-officio* clerk of the board of equalization, must record all changes, corrections, and orders made by the board and on or before the last Monday of August must deliver the assessment-roll so corrected to the council with "an affidavit thereto affixed subscribed and sworn to by him" in a prescribed form. The required form was made out and signed by the clerk but no *jurat* was attached to it. These omissions of the officers charged with the duty of authenticating the assessment were fatal to the acquiring of jurisdiction to sell the property to the city. Respondent depends upon the rule announced in *Miller* v. *Kern County*, 137 Cal. 516, [70 Pac. 549], and we can see no escape from the conclusion supported by that case that at least the proceedings following the clerk's omission properly to certify the equalized roll were invalid. It was said in that case that without the affidavit of the clerk affixed to the assessment-book the auditor had no power to compute the taxes. True, the requirements of the ordinance were not exactly the same as those of the law considered in the Miller case, in that the roll was not passed to the auditor or other officer for extension of the levy after equalization, but the proper authentication of the equalized roll is none the less made prerequisite to all future proceedings. Neither the *prima facie* evidence of the regularity of the antecedent proceedings furnished by the deed to the city nor the curative clause of the ordinance relating to informalities is available against the clear showing that the clerk failed to authenticate the corrected roll as required by the ordinance. If the ordinance merely commanded that an affidavit should be taken and sworn to when the equalization of the taxes was completed, perhaps the appearance of the affidavit without a *jurat* might be cured by the presumption of regularity; but the ordinance requires that the affidavit must be *subscribed* and sworn to and *affixed to the*

*assessment-roll.* Without a proper *jurat* the writing in the record is not an affidavit at all, but amounts merely to a certificate. It is not even a statement on oath, and it entirely fails to measure up to the requirements of the statute. (*Metcalf* v. *Prescott,* 10 Mont. 283–294, [25 Pac. 1037]; *Cosner's Admr.* v. *Smith,* 36 W. Va. 788, [15 S. E. 977]; *Gordon* v. *State,* 29 Tex. Cr. 410, [16 S. W. 337].)

It is to be noted that section 63 of the ordinance, which is called by counsel the "curative clause," is essentially the same as section 3885 of the Political Code, which was in effect when *Miller* v. *Kern County,* 137 Cal. 516, [70 Pac. 549], was decided; yet a compliance with the terms of the statute requiring the subscription and attachment to the roll of an affidavit was held necessary in that case. Speaking of the affidavit of the clerk and that of the tax collector the learned commissioner who wrote the opinion in the Miller case said: "These affidavits are in effect the certificate or authentication of the assessment as it leaves the county board of equalization and as made to conform to the requirements of the state board, and, we think, are essential to its validity."

This court is also in accord with the contention of respondent that the ordinance, under which the attempt to sell the property for taxes was made, was in contravention of the charter of the city of Los Angeles. By this ordinance it was provided that before sale by the city of property which had been sold to it for municipal taxes the clerk should fix a date for such sale and give notice thereof by publication for at least ten days in a daily paper. The deed upon which appellant relies recites a publication for a period of only ten days. It also recites a posting for ten days, which is likewise in consonance with the ordinance. But the charter provides that the mode and manner of collecting delinquent municipal taxes and enforcing the tax lien shall "substantially be the same as the mode and manner at the time prescribed by law for the collection of state and county taxes." The same section of the charter (No. 46) contains the further provision that "All such proceedings, sales, certificates and conveyances had, made and executed by them in pursuance thereof, shall be of like force, effect and validity as is or may hereafter be given by law to like proceedings and acts in the matter of the collec-- tions of state and county taxes in said county." But by section 3897 of the Political Code the analogous notice concerning

state and county taxes must be published in a newspaper for at least *three successive weeks,* and must be posted for at least the same period. The ordinance fails to measure up to the requirements of the charter provision. It is no answer to this point to say that when a taxing power has acquired private property by due process of law it may resell without notice to the former owner or may give such notice as in its discretion may seem proper. Appellant's position on this subject is met by the simple fact that the state *has* provided for notice and the manner of giving it. As Mr. Justice Lorigan said in delivering the opinion of this court in *Smith* v. *Furlong,* 160 Cal. 522–529, [117 Pac. 527] : "It is true, as said in *Fox* v. *Wright,* 152 Cal. 59, 61, [91 Pac. 1005], that it is not necessary for the state after it has acquired the title to property under delinquent tax sales to provide for any notice to the delinquent owner that the state intends to sell the property; that it could provide for disposing of it at private sale. But the state has not pursued this course. It has provided that a sale shall be made by it after notice to the delinquent owner and provided how that notice shall be given." Nor may it be justly said that the publication of the notice for ten days is a "substantial" compliance with the charter and the incorporated sections of the Political Code. The length of the time during which a notice must be given is quite as substantial as the requirement that notice must be given at all.

Appellant's counsel contend that without reference to the findings against the validity of the various proceedings through which he asserts title, nevertheless respondent should have no relief, because he has traced title to the city through a deed resulting from delinquency in payment of valid taxes and has not proven any tender to the city of the amount for which he is delinquent. The title, as say counsel, stands in the city (unless conveyed by the city to defendant, which plaintiff denies). Therefore, they argue, plaintiff under his own proof has no concern with defendant or his claims. As the proceedings leading up to the deed to the city were invalid, there is no room for this contention.

Other findings of the court against the validity of the sale are analyzed in the briefs, but we need not discuss them because the errors to which we have adverted above were sufficient to prevent the acquirement of title by the city, appel-

lant's alleged predecessor in interest, or in any view to make the attempted transfer to him of no effect.

The judgment and order are affirmed.

Shaw, J., Sloss, J., Henshaw, J., Lorigan, J., and Angellotti, C. J., concurred.